✓ FILED ___ LODGED
___ RECEIVED ___ COPY

OCT 2 1 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_______________ DEPUTY

Catherine Jane Lynch, Plaintiff Pro Per

714 N 27th Ave

Phoenix, AZ 85009

catherinelynchfwbc@gmail.com

480-532-0393

**CV-26-07691-PHX-DWL**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

CATHERINE JANE LYNCH,

Plaintiff,

v.

HOMESMART, L.L.C., an Arizona limited liability company; MARTHA OLIVIA MENDOZA, an individual; JOEL MENDOZA, an individual; CONNIE RAMIREZ, an individual; JULIETH CORTES, an individual; NATIONAL ASSOCIATION OF REALTORS, an Illinois non-profit corporation; ARIZONA ASSOCIATION OF REALTORS, an Arizona non-profit corporation; STATE OF ARIZONA ex rel. ARIZONA DEPARTMENT OF REAL ESTATE, a state

regulatory agency; ARIZONA REGIONAL MULTIPLE LISTING SERVICE, INC., an Arizona corporation; DRIGGS TITLE AGENCY, INC., an Arizona corporation; FIRST INTEGRITY TITLE AGENCY OF ARIZONA, LLC, an Arizona limited liability company; OLIVIA SIMMONS, an individual; and MICHAEL H. ORCUTT, an individual,

Defendants.

Case No. 2:26-cv-____________________

(To be assigned by Clerk)

**VERIFIED CIVIL COMPLAINT FOR FRAUD, BREACH OF CONTRACT, TORTIOUS INTERFERENCE, COERCION, GROSS NEGLIGENCE, AND AVOIDANCE OF FRAUDULENT CONVEYANCE**

Plaintiff Catherine Jane Lynch, proceeding pro per, alleges as follows:

## I. JURISDICTION AND VENUE (WHERE)

1. This Court has original subject-matter jurisdiction over the federal constitutional claims pursuant to **28 U.S.C. § 1331** and **42 U.S.C. § 1983**, as this controversy arises directly under the Fifth, Seventh, and Fourteenth Amendments

to the United States Constitution regarding the deprivation of property interests and arbitrary denial of due process via a joint-venture conspiracy operating under color of state custom and summary procedures.

2. **Verbatim, 28 U.S.C. § 1331 dictates: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."**

3. **Verbatim, 42 U.S.C. § 1983 dictates: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."**

4. **Verbatim, the relevant clause of the Fifth Amendment to the United States Constitution dictates: "nor shall any person be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."**

5. **Verbatim, the Seventh Amendment to the United States Constitution secures the absolute right to a trial by jury in civil disputes and dictates: "In Suits at common law, where the value in controversy shall exceed twenty**

**dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."**

6. **Verbatim, the relevant clause of Section 1 of the Fourteenth Amendment to the United States Constitution dictates: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor shall deny to any person within its jurisdiction the equal protection of the laws."**

7. This Court possesses supplemental jurisdiction over all related Arizona state-law claims—including fraud, fraudulent misrepresentation, quiet title, breach of statutory escrow mandates, breach of contract, and civil coercion against the named defendants—pursuant to **28 U.S.C. § 1367(a)**, because they form part of the same case or controversy under Article III of the United States Constitution.

**Verbatim, 28 U.S.C. § 1367(a) dictates: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such**

**supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."**

8. **Verbatim, Article III, Section 2, Clause 1 of the United States Constitution establishes the boundary of federal court authority and dictates: "The Judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States,—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."**

9. Venue is proper in the District of Arizona under **28 U.S.C. § 1391(b)(2)** as the real property, transaction parameters, and events giving rise to the claims are situated entirely within this judicial district.**Verbatim, 28 U.S.C. § 1391(b)(2) dictates: "A civil action may be brought in— (2) a judicial district in which a**

**substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;"**

## II. IDENTIFICATION OF PARTIES (WHO)

10. Plaintiff Catherine Jane Lynch is an individual, a 74-year-old widowed grandmother, and a resident of Maricopa County, Arizona, who brings this federal action in her capacity as a self-represented (pro per) litigant to remedy catastrophic property destruction and constitutional deprivations.

11. Defendant HomeSmart, L.L.C. is an active Arizona limited liability company engaged in commercial real estate brokerage operations, maintaining its principal corporate headquarters at 8388 East Hartford Drive, Suite 100, Scottsdale, AZ 85255, and operating a local branch office at 17215 N 72nd Dr, Building B, Suite 115, Glendale, AZ 85308. Defendant HomeSmart, L.L.C. possessed full corporate knowledge, both directly and through its designated agents, that Defendant Martha Olivia Mendoza was executing deeds under a false unmarried status, intentionally allowing a groundless and void title framework to pass to Plaintiff through its brokerage operations.

12. Defendant Martha Olivia Mendoza is an individual whose current state of citizenship and physical residency are unknown to Plaintiff due to active concealment. Pursuant to the court's disclosure rules requiring the identification of

all party parameters, Plaintiff states that her own escrow closing statements were deceptively structured to obscure the sellers' location by listing their address as Plaintiff's primary property at 714 N 27th Ave, Phoenix, AZ 85009. In subsequent court proceedings, Defendant Michael H. Orcutt provided the specific directive to contact Defendant Driggs Title Agency, Inc. to obtain the true address metrics from the internal closing files. Through this disclosure trail, Plaintiff uncovered that Defendant Driggs Title Agency, Inc. possessed the documented residential address block of 584 N Highland Dr, Nogales, AZ 85621 on the internal closing statement records. Because Defendant is utilizing systematic address loops to actively evade service of process, her current exact physical residence remains unknown to Plaintiff, and she is being submitted to the court via her designated counsel block.

13. Defendant Joel Mendoza is an individual whose current state of citizenship and physical residency are unknown to Plaintiff due to active concealment. Pursuant to the court's disclosure rules requiring the identification of all party parameters, Plaintiff states that her own escrow closing statements were deceptively structured to obscure the sellers' location by listing their address as Plaintiff's primary property at 714 N 27th Ave, Phoenix, AZ 85009. Following the directive of Defendant Michael H. Orcutt in open court to extract the hidden records from Defendant Driggs Title Agency, Inc.,Plaintiff uncovered that Defendant Driggs Title Agency, Inc. possessed the documented residential address

block of 584 N Highland Dr, Nogales, AZ 85621 on the internal closing statement records. Because Defendant is utilizing systematic address loops to actively evade service of process, his current exact physical residence remains unknown to Plaintiff, and he is being submitted to the court via his designated counsel block.

14. Defendant Connie Ramirez is an individual and a licensed real estate salesperson who is actively licensed with Defendant HomeSmart, L.L.C. and who executed the transaction as Plaintiff's exclusive fiduciary buyer-agent, maintaining her active corporate licensing address at 17215 North 72nd Drive, Building B, Suite 115, Glendale, Arizona 85308.

15. Defendant Julieth Cortes is an individual and a licensed real estate salesperson who is actively licensed with Defendant HomeSmart, L.L.C. and who executed the transaction as the sellers' primary listing agent, maintaining her active corporate licensing address at 17215 North 72nd Drive, Building B, Suite 115, Glendale, Arizona 85308.

16. Defendant National Association of Realtors is an active Illinois non-profit corporation operating as the overarching umbrella organization for member real estate brokerages, maintaining its corporate service address at 430 North Michigan Avenue, Chicago, Illinois 60611.

17. Defendant Arizona Association of Realtors is an active Arizona non-profit corporation operating as the state-level regulatory trade enforcement organization,

maintaining its principal service address at 255 East Osborn Road, Suite 200, Phoenix, Arizona 85012.

18. Defendant State of Arizona ex rel. Arizona Department of Real Estate is a state administrative agency vested with regulatory oversight, maintaining its principal executive office block at 100 North 15th Avenue, Suite 201, Phoenix, Arizona 85007.

19. Defendant Arizona Regional Multiple Listing Service, Inc. is an active Arizona domestic corporation operating the primary electronic real estate property transaction database, maintaining its physical principal office at 130 S Priest Dr #101, Tempe, AZ 85281.

20. Defendant Driggs Title Agency, Inc. is an active real estate closing and title insurance corporation maintaining its corporate registry parameters under the laws of Arizona, continuously conducting business through its primary regional headquarters located at 8360 East Raintree Drive, Scottsdale, Arizona 85260 and 7121 W Bell Rd, Suite 140, Glendale, AZ 85308. Defendant Driggs Title Agency, Inc. possessed explicit knowledge, through its designated escrow officers, of Defendant Martha Olivia Mendoza's true marital status, yet processed the October 26, 2022 transaction despite knowing the deed contained a material marital misstatement that manufactured a baseline cloud on the title.

21. Defendant First Integrity Title Agency of Arizona, LLC is an active Arizona limited liability company engaged in real estate escrow settlement operations, maintaining its primary corporate regional headquarters located at 335 E Palm Ln, 2nd Floor, Phoenix, Arizona 85004, and continuously conducting business through its active regional operational facility at 5100 N 99th Ave, Suite 112, Glendale, Arizona 85305. Defendant First Integrity Title Agency of Arizona, LLC possessed explicit knowledge, through its operations and staff, of the ongoing marital status deception, yet actively executed the rapid December 17, 2024 midday escrow loop to finalize secondary asset migrations despite knowing the underlying instruments were void and further clouded the property track.

22. Defendant Olivia Simmons is an individual escrow officer who executed settlement entries for the subject real estate transactions within Maricopa County, Arizona. Defendant Olivia Simmons was originally employed as an escrow officer by Defendant Driggs Title Agency, Inc., where she personally closed the October 26, 2022 property sale from Defendant Martha Olivia Mendoza to Plaintiff, and was subsequently employed by Defendant First Integrity Title Agency of Arizona, LLC, where she executed the rapid December 17, 2024 midday community property asset transfers of the sale of the 1018 N. 28th St. Joel Mendoza property. At all times, Defendant Olivia Simmons held direct personal knowledge of Defendant Martha Olivia Mendoza's and Joel Mendoza’s true marital status and the

unpermitted tunnel defects, carrying that knowledge across both corporate umbrellas to actively facilitate the execution of groundless, clouded, and fraudulent title instruments.

23. Defendant Michael H. Orcutt is an individual defense attorney and administrative co-conspirator who deployed active candor breaches to short-circuit the creation of an electronic docket record, maintaining his legal operations block and principal place of business at Jennings Haug Keleher McLeod Waterfall LLP, 1850 N Central Ave, Suite 1150, Phoenix, AZ 85004, within Maricopa County, Arizona.

**II-A. Coercion Matrix, Civil Rights Conspiracy under 42 U.S.C. § 1983, and Unified Liability Breakdown**

- **The Intentional Fraudulent Misrepresentation**: Defendant Martha Olivia Mendoza, acting in direct coordination with Defendant HomeSmart, L.L.C. and individual agents Connie Ramirez and Julieth Cortes, weaponized a standard Seller's Property Disclosure Statement (SPDS) to execute an affirmative, fraudulent misrepresentation regarding ground compaction to force a real estate closing. As conclusively proven by an active email record in Plaintiff's possession, the HomeSmart agents were directly involved in the drafting and writing of Line 198, holding explicit prior knowledge of the subterranean defect and the fact that it

had been improperly repaired and deceptively masked. Defendants concurrently deployed a commercial mail-screening drop to insulate themselves from personal process and hide this structural fraud.

- **The Coordinated Asset Extraction**: Defendant Joel Mendoza acted in concert with Defendant Martha Olivia Mendoza to execute the structural fraud, and strategically participated in the December 17, 2024 midday escrow loop to drain community property assets behind closed doors before a written court injunction could be recorded.

- **The Fiduciary Concealment:** Defendant HomeSmart, L.L.C. and individual agents Connie Ramirez and Julieth Cortes actively concealed prior transaction cancellations, ignored structural earth fissure alerts delivered directly to the principal broker, operated an undisclosed dual agency, manipulated category tracking fields to secure a corporate commission, and deliberately concealed the marital status fraud where Defendant Martha Olivia Mendoza executed title deeds under a false unmarried status to bypass mandatory spousal joinder rules and allow a groundless, void, and clouded title framework to pass to Plaintiff.

- **The Institutional Summary Omissions:** Defendants National Association of Realtors , Arizona Association of Realtors , Arizona Regional Multiple Listing Service, Inc. , and the State of Arizona ex rel. Arizona Department of Real Estate are liable for maintaining structural summary systems and permitting

administrative omissions that shield industry targets from systemic liability. Despite being presented with reams and reams of definitive, certified physical evidence and structural documentation by Plaintiff, the ADRE unconstitutionally rubber-stamped a summary dismissal of the core licensing allegations, issuing nothing more than a nominal penalty to protect the active licensees. This institutional tracking failure successfully insulated the corporate real estate framework, effectively blindfolded consumer tracking platforms, and actively maintained the unconstitutional cloud over Plaintiff's homestead title, directly resulting in the unlawful taking of Plaintiff's primary homestead.

- **The Unlawful Taking of Primary Residence**: The cumulative operational parameters and coordinated concealment loops executed by the private and administrative Defendants have resulted in a total deprivation of Plaintiff's vested property interests under color of custom. By establishing an impenetrable screening barrier over structural defects, fabricating open-court procedural timelines, and permitting summary enforcement actions to proceed in the absolute absence of a joint scheduling order or active discovery track, the Defendants collectively manufactured a system of economic duress and coercion. This continuous, unified scheme successfully forced the unlawful taking of Plaintiff's sole primary residence, completely stripping an unrepresented seventy-four-year-old widow of her homestead stability, causing catastrophic

economic ruin, and unconstitutionally denying her fundamental due process protections under the Fourteenth Amendment to the United States Constitution.

- **The Escrow Manipulation & Service Evasion Drop:**Defendants HomeSmart, L.L.C., Connie Ramirez, Julieth Cortes, Driggs Title Agency, Inc., First Integrity Title Agency of Arizona, LLC, Olivia Simmons, and Michael H. Orcutt initiated a service evasion campaign while concurrently engineering a customized contract addendum to force a rapid closing, presenting a fabricated timeline to secure a verbal denial, and subsequently deploying a deceptive third-party mail-screening drop to block standard process service.
- **The Unified Coercion Result, Compounded Fissure Risk, and Boundary Liability:** The Unified Coercion Result, Compounded Fissure Risk, and Boundary Liability: This action fundamentally involves a unified, indivisible course of conduct where every single named Defendant actively partook in, or institutionally facilitated, the catastrophic unconstitutional taking and destruction of Plaintiff's single primary residence and homestead. Because this abandoned underground concrete tunnel sits a mere 3 feet from the northern property boundary, the unchecked subsurface earth instability directly threatens the structural framework of the adjacent residential home sitting 3 feet on the other side of that line. By leaving Plaintiff stranded with a collapsing, un-repairable lot frame, the joint tortious actions of all Defendants have unconstitutionally stripped an elderly

consumer of her shelter while directly exposing her to massive third-party structural liability for the potential collapse of the neighboring property.

- **The Specific Entities and Operational Capacities Subject to Unified Conspiracy Liability:**
- **Plaintiff Catherine Jane Lynch:** An individual, self-represented widow residing at 714 North 27th Avenue, Phoenix, Arizona 85009. Plaintiff holds a protected property interest in her primary residence and brings this federal civil rights action to remedy severe financial destruction, coercion, and an unconstitutional property taking executed under color of state custom.
- **Defendant HomeSmart, L.L.C.:** An Arizona limited liability company operating as a commercial real estate brokerage. **HomeSmart, L.L.C** owed strict fiduciary duties to Plaintiff but actively concealed prior transaction cancellations, ignored structural earth fissure alerts delivered directly to its principal broker, and manipulated category tracking fields to secure its corporate commission.
- Defendant Martha Olivia Mendoza: An individual whose current state of citizenship and physical residency are unknown to Plaintiff due to active concealment, and who acted as a primary transaction seller of 714 North 27th Avenue. Defendant weaponized a standard Seller's Property Disclosure Statement (SPDS) to execute an affirmative, fraudulent misrepresentation regarding ground

compaction to force a real estate closing, while concurrently using a commercial mail-screening drop to insulate herself from personal process.

- Defendant Joel Mendoza: An individual whose current state of citizenship and physical residency are unknown to Plaintiff due to active concealment, and who acted as a primary transaction seller of 714 North 27th Avenue. Defendant acted in concert with Defendant Martha Olivia Mendoza to execute the structural fraud, and strategically participated in the December 17, 2024 midday escrow loop to drain community property assets behind closed doors before a written court injunction could be recorded.

- **Defendant Connie Ramirez:** An individual operating as a licensed real estate agent under the corporate umbrella of HomeSmart, L.L.C. Defendant orchestrated the late-stage transactional documentation, acted as an undisclosed dual agent to protect the sellers' concealment, and actively facilitated the transaction to finalize the fraudulent closing.

- **Defendant Julieth Cortes:** An individual operating as a transaction processing officer. Defendant utilized her administrative access within the escrow machinery to execute accelerated documentation shifts, aligning closing deadlines with specific state court hearing windows to facilitate the rapid removal of funds from the reach of the tribunal.

- **Defendant National Association of Realtors :** is an active Illinois non-profit corporation that establishes the mandatory operational rules, guidelines, and structural framework under which local brokerages operate. Defendant National Association of Realtors is liable for maintaining structural summary systems that allow member brokers to hide material property defects and manipulate consumer tracking data.

- **Defendant Arizona Association of Realtors :** A statewide business entity that provides the standardized contract instruments, boilerplate disclaimers, and electronic disclosure forms deployed by the conspirators to insulate themselves from fraud liability.

- **Defendant State of Arizona ex rel. Arizona Department of Real Estate:** A state regulatory agency charged with monitoring real estate licensee compliance. ADRE participated in the deprivation of process by maintaining systematic omission tracking and permitting administrative custom to insulate licensed corporate brokerages from explicit fraud oversight, thereby perpetuating the toxic cloud on Plaintiff's title.

- **Defendant Arizona Regional Multiple Listing Service, Inc.:** A business entity operating the primary regional property data ledger. ARMLS permitted the systematic deletion, altering, and burying of historical MLS category codes and

defect alerts, effectively blindfolding consumer tracking systems to hide the property's catastrophic history.

- **Defendant Driggs Title Agency, Inc.:** A business entity initially designated by contract to handle the closing escrow for 714 North 27th Avenue. Defendant Driggs Title Agency, Inc. is involved in the tracking transition and corporate records management that allowed transaction parameters to be moved off-site.
- **Defendant First Integrity Title Agency of Arizona, LLC**: A business entity utilized as the separate administrative platform to execute the accelerated December 17, 2024 midday escrow loop. Defendant First Integrity Title Agency of Arizona, LLC processed the emergency community property transfers for the Mendozas' separate assets on the identical morning of Plaintiff's injunction hearing, bypassing standard recording lag-times to shield funds from the court ledger.
- Defendant Olivia Simmons: An individual escrow officer who managed the transactional files and migrated the escrow infrastructure from Defendant Driggs Title Agency, Inc. to Defendant First Integrity Title Agency of Arizona, LLC. Defendant First Integrity Title Agency of Arizona, LLC. knowingly executed the accelerated closing papers and the Affidavit of Property Value on the afternoon of December 17, 2024 to complete the fraudulent asset conveyance.
- Defendant **Michael H. Orcutt**: An individual and corporate defense attorney who actively directed the pre-litigation concealment strategy. Defendant Michael

H. Orcutt presented a fabricated timeline to a state tribunal on the morning of December 17, 2024 to secure a verbal denial, signaled the standby escrow unit to execute the asset transfers the precise second the hearing concluded, and subsequently deployed a deceptive third-party mail-screening drop to block standard process service. Furthermore, in open court, Defendant Michael H. Orcutt intentionally misled the tribunal by falsely stating he rejected Plaintiff's subpoena under the claim that he could not have the Mendozas served through him. In truth, Plaintiff's subpoena did not request service of process through his office; rather, it explicitly demanded any and all email records and documentation regarding the fraudulent transfer of the Joel Mendoza property, which Defendant Michael H. Orcutt suppressed under the guise of an ungrounded conflict of interest. Yet, in that same proceeding, Defendant Michael H. Orcutt gave the explicit direction to contact Defendant Driggs Title Agency, Inc. to obtain the final closing statement, which he knew contained the hidden 584 N Highland Dr, Nogales, AZ 85621 address, thereby actively managing and manipulating the disclosure trail to protect the ongoing asset extraction loop.

## III. STATEMENT OF FACTS (WHAT AND WHEN)

**A. The Foundation of Underlying Structural Defects and Pre-Purchase Real Estate Data Track (Paragraphs 24 through 41)**

**The 2007–2022 Root Fraud (Paragraphs 24 through 41): Tracking the deflated $26,500 FNMA cash sale, the 2021 aerial records, and the deliberate ARMLS photograph alterations and hidden listings used to sweep the prior buyer's monsoon breakout out of sight.**

24. On December 24, 2007, the real property located at 714 North 27th Avenue, Phoenix, Arizona 85009, was sold for $115,500.00 with zero down payment via a Wells Fargo mortgage instrument to a prior owner, Castellanos.

25. On August 28, 2008, a severe, documented meteorological monsoon event occurred directly over the geographic parcel, causing heavy structural topsoil erosion and exposing the presence of a deep, unpermitted subterranean concrete structure.

26. Following the 2008 monsoon event, the primary owner walked away from the property, forcing Wells Fargo to attempt an unexecuted real estate auction.

27. On February 6, 2009, the Federal National Mortgage Association (Fannie Mae / FNMA) purchased the property after a failed foreclosure auction from Wells Fargo for $119,603.98.

28. On March 31, 2009, Fannie Mae listed the parcel as a Real Estate Owned (REO) lender-owned property on the Arizona Regional Multiple Listing Service, Inc. for a severely deflated cash price of $26,500.00.

29. On May 8, 2009, Defendant Martha Olivia Mendoza closed the cash purchase of 714 North 27th Avenue directly from Fannie Mae for $26,500.00, falsely declaring an unmarried status on recording sheets and executing a Special Warranty Deed using her primary address block as 1018 North 28th Street, Phoenix, Arizona 85008 (a property parcel owned by Co-defendant Joel Mendoza). Because Defendant Martha Olivia Mendoza was legally married to Co-defendant Joel Mendoza at the time of this 2009 acquisition, her unilateral execution of the purchase deed as an unmarried woman directly violated marital property characterization rules, establishing her illegal ownership and manufacturing an immediate, baseline cloud on the title.

30. In September 2021, high-resolution public aerial photography captured ongoing, unpermitted earth-moving work at the 714 North 27th Avenue parcel, showing a prominent sandy patch and a pile of dirt placed in the area of the sandy patch.

31. Between July 21 and July 26, 2021, and August 11 and August 18, 2021, sequential monsoon events severely washed out the topsoil covering the uncompacted underground basement structure.

32. On May 30, 2022, Defendant HomeSmart, L.L.C., through listing agent Defendant Julieth Cortes, officially listed the property on ARMLS as MLS #6408331 for $315,000.00, uploading a primary featured photograph that clearly depicted a large, prominent pile of dirt dumped directly over the underground basement structure.

33. On June 10, 2022, Defendant Julieth Cortes manually altered the primary ARMLS database photograph, replacing it with an image that reflected less of the dirt pile, and appended the following restrictive operational remarks: "No showings until offer is accepted. Buyer can view the property during inspection period. Seller has never lived on the property, no SPDS."

34. The insertion of public listing remarks flatly refusing to provide mandatory transfer disclosures or permit property viewings until contract acceptance directly violates the mandatory consumer protection rules, structural guidelines, and listing bylaws of the Multiple Listing Service (MLS).

35. Prior to the seasonal monsoon event of 2022, all previous public and historical real estate marketing files generated for the 714 North 27th Avenue property parcel did not contain any written statements or tags declaring "No SPDS."

36. On June 29, 2022, Defendant Julieth Cortes executed a secondary alteration of the primary MLS photograph, uploading a completely modified angle that

entirely erased any visual trace of the dirt pile or the underlying subterranean structural hazard.

37. On July 12, 2022, the property went into a pending escrow contract status with an independent prospective buyer.

38. Between July 16 and July 18, 2022, secondary monsoon deluges struck the property, causing the surface soil to open up and expose the subterranean structure to the active escrow buyer.

39. On July 21, 2022, upon discovering the true, uncompacted nature of the underground cavity, the prospective buyer immediately exercised cancellation rights and backed out of the transaction.

40. On July 21, 2022, immediately following the buyer's cancellation, Defendant Julieth Cortes changed the MLS status back to active to hunt for a new consumer, manually rotating the primary transaction photographs on July 26, August 6, and September 7, 2022, and manipulating multiple listing numbers to systematically sweep the prior buyer's cancellation trail out of reachable tracking view.

41. On September 7, 2022, Defendant Julieth Cortes completely scrubbed the transaction history by generating a brand-new MLS listing file with a new number, explicitly stating on the digital interface that zero disclosures would be provided, NO SPDS, **there was completely and intentionally no disclosure of the material**

**defect within the MLS listings, and thirty years of structural defect history was intentionally withheld from reachable tracking view**

**B. The Active Escrow Timeline and Fraudulent Line 198 Inducement (Paragraphs 42 through 67)**

**The Showing & Escrow Track (Paragraphs 42 through 57): The exclusive written Buyer Representative Agreement, Connie Ramirez admitting "Too many repairs," admitting her lack of any knowledge of the sandy patch and her deliberate refusal to follow up on the 400-square-foot sandy patch, and the tenant delivering the exposed structure video.**

42. Prior to the execution of the purchase contract, Defendant Connie Ramirez completely failed to disclose any dual agency relationship, conflicts of interest, or double-sided transaction parameters, completely withholding mandatory real estate agency election forms from reachable tracking view.

43. At the absolute inception of this transaction, Defendant Connie Ramirez had Plaintiff Catherine Jane Lynch execute a formal, written Buyer Representative Agreement establishing that Ramirez was representing Plaintiff exclusively.

44. On September 26, 2022, the purchase contract officially opened between Plaintiff Catherine Jane Lynch and the defendants for the purchase of 714 North 27th Avenue.

45. Plaintiff executed this exclusive agreement with an explicit, written clarification restricting the scope of the representation solely to the purchase of 714 North 27th Avenue, providing clear, unassailable validation of an exclusive buyer-agent relationship.

46. In September 2022, during the initial on-site physical showing of the 714 North 27th Avenue property, Plaintiff observed the transaction history and stated to Defendant Connie Ramirez that the sellers must have had a lot of prospective buyers on this property.

47. Defendant Connie Ramirez looked directly at Plaintiff and replied: "Yes."

48. Plaintiff then explicitly asked Defendant Connie Ramirez: "Why has this property not sold then?"

49. Defendant Connie Ramirez explicitly stated to Plaintiff in response: "Too many repairs."

50. Defendant Connie Ramirez repeatedly stated to Plaintiff on that day that the seller would absolutely refuse to provide a standard Seller's Property Disclosure Statement (SPDS).

51. Immediately following that dialogue on the exact same day, while standing on the front yard layout, Plaintiff pointed to an anomalous ground surface variation and explicitly asked Connie Ramirez if she knew why there was a 400-square-foot sandy area in the front yard.

52. Defendant Connie Ramirez stated to Plaintiff in response that she did not know what the sandy patch was.

53. Plaintiff explicitly instructed Defendant Connie Ramirez: "Would you find out?"

54. Defendant Connie Ramirez completely failed to answer the question, ignored Plaintiff's direct consumer inquiry, and subsequently failed to conduct any follow-up or provide the requested structural parameter information.

55. On September 29, 2022, the defendants intentionally concealed the structure by completely failing to disclose the defect at the mandatory statutory disclosure deadline pursuant to the Arizona Real Estate Code.

56. Upon Plaintiff's inspection, an active tenant residing at the property opened up to Plaintiff stating, **" I cannot lie to you,"**..." I must tell you about this sandy patch in the front yard". The tenant shared with Plaintiff a video he had captured during a monsoon and transmitted a cellular video to Plaintiff showing the true, open physical exposure of a deep, hollow concrete subterranean structure crossing boundary lines.

57. Plaintiff immediately delivered the tenant-produced video along with her BINSR report to her exclusive agent, Defendant Connie Ramirez.

**The Line 198 Smoking Gun (Paragraphs 58 through 67): The sellers executing the fraudulent written declaration right after a formal BINSR repair refusal, Connie's hidden email loop stating that the video and the SPDS line 198 do not match; and demanding a buyer name swap to obscure the trail.**

58. On October 5, 2022, Plaintiff informed the defendants of her knowledge of the recent monsoon-exposed structure, noted the large sandy patch masking the hazard, and explicitly demanded a professional evaluation and complete structural repairs.

59. On October 6, 2022, the defendants issued a flat written refusal, stating they would allow zero evaluations and zero physical property repairs.

60. On October 7, 2022, to break the escrow deadlock and prevent Plaintiff from canceling the contract, the sellers turned around and executed a final, positive written declaration to the buyer on Line 198 of the disclosure statement, fraudulently misrepresenting the repair of the underground hazardous defect by explicitly declaring: "Years after I purchased the property during a monsoon season a hole opened up on the ground, I then filled and compacted with dirt."

61. Upon receiving this video and declaration, Defendant Connie Ramirez realized the tenant's video completely contradicted the sellers' "hole" description,

and immediately emailed listing agent Julieth Cortes, stating that the video and Line 198 did not match, validating that corporate entity HomeSmart, L.L.C. held actual, documented prior knowledge of the subterranean defect and actively sought to manipulate the transaction history to obscure the paper trail from reachable consumer oversight.

62. The specific property disclosure document that Defendant Julieth Cortes turned around and transmitted to Defendant Connie Ramirez contained the name of a prior, completely separate buyer, and did not contain Plaintiff's name.

In that same electronic mail transmission, Defendant Connie Ramirez further instructed listing agent Julieth Cortes that they needed to immediately switch the buyer's name on the primary files to cover up the documentation trail.

63. To further insulate the fraud, HomeSmart Broker Gregory Davis directly intercepted Plaintiff, falsely stating that corporate internal logs showed that Plaintiff was the individual who had cancelled the prior failed escrow files, attempting to confuse the buyer and hide the prior buyer's monsoon washout cancellation.

**64. There was absolutely no other disclosure, document amendment, or transaction event executed by the defendants between the delivery of that Line**

**198 statement and the final closing date; when Plaintiff read the explicit late-stage words written on Line 198 declaring that the seller had filled and compacted the ground with dirt, Plaintiff reasonably, completely, and justifiably relied exclusively on those positive assurances of structural compaction to proceed to close escrow on October 26, 2022.**

65. On October 26, 2022, Defendant Martha Olivia Mendoza executed the final closing documents and the fraudulent Line 198 property disclosure statement to induce the sale of 714 North 27th Avenue, again utilizing the explicit public designation of an unmarried woman on the face of the conveyance instruments to actively bypass mandatory marital property restrictions and push the fraudulent transaction through escrow.

66. Because Defendant Martha Olivia Mendoza did not legally hold clear or unclouded title to the property to begin with due to her fraudulent 2009 recording sheets, her subsequent execution of the October 26, 2022 final closing deeds and fraudulent Line 198 disclosure statement under the false public designation of an unmarried woman piled a second, compounding fraud onto the record. This structural deception directly violated the mandatory community property spousal joinder restrictions under Arizona Revised Statutes Section 25-214(C)(1), unconstitutionally passing a severely clouded, legally toxic, and void title

framework onto Plaintiff's primary residence to bypass marital property restrictions and force the transaction through escrow.

**The Permanent Deprivation of Use, Ground Instability, and Extricable Third-Party Liability**

67a. Since Plaintiff closed escrow on the property on October 26, 2022, the homestead asset remains completely unsafe and uninhabitable due to the catastrophic, hidden structural failures. Plaintiff is the only individual occupying the land, effectively camping out, if you will, on the property inside the front house. This property is Plaintiff's single and only primary place of residence. The two single-family houses situated on the lot were expressly intended to be used as a multi-generational housing safety net for Plaintiff and her immediate extended family, which encompasses her 4 children and 8 grandchildren.

67b. Right now, the property is fundamentally unsafe for human occupancy due to the active instability of the ground and the unknown, ongoing structural compromises developing on-site due to the extensive length of time this massive underground structure has been left abandoned. As physically proven when the van backed in and sunk into the earth, the subterranean hazard was improperly

repaired, deceptively masked, and it remains entirely unknown whether the structural damage is even repairable by modern engineering standards.

67c. This unpermitted underground structure is situated only 3 feet from the north boundary property line of the parcel. The neighboring residential house sits approximately 3 feet from that exact same northern boundary line. Because the underground hazard remains unstable and improperly compacted, it is actively and potentially impacting the structural stability of the neighboring property, thereby directly subjecting the unrepresented Plaintiff to immediate, third-party structural liability for that adjoining property as well. Plaintiff's only home has been systematically and unconstitutionally taken by the joint, coordinated actions of all named Defendants operating in a continuous enterprise of economic coercion and fraud.

67d. Verbatim, the strict consumer protection laws of the State of Arizona state that any deceptive omission or suppression of a material property hazard constitutes an unlawful practice, as Arizona Revised Statutes Section 44-1522(A) commands word-for-word: "The act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale

or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

**C. Post-Collapse Discoveries, Law of the Case, and Systematic Judicial Breakdown (Paragraphs 68 through 107)**

**The Law of the Case & Judicial Breakdown (Paragraphs 68 through 90): Judge Timothy Ryan's binding April 24, 2025 oral ruling validating your justifiable reliance, the rapid December 17, 2024 midday asset transfers, Defendant Michael H. Orcutt's professional candor breaches; and Alli Homsi's expert July 30, 2025 engineering inspection validating that the structure was completely hidden from the naked eye; and the unconstitutional state administrative and appellate maneuvers that slammed your case shut on September 12, 2025, with zero discovery and zero scheduling orders.**

68. During the course of the underlying litigation, Plaintiff conducted an exhaustive investigation of the Multiple Listing Service (MLS) history for the 714 North 27th Avenue property parcel and discovered a critical 2009 listing entry that had been intentionally placed and hidden within a completely different transactional category than the 2022 listing categories.

69. This hidden data was uncovered exclusively through advanced database search methods and was not readily discoverable on standard public search channels.

70. Upon confrontation, representatives of the Multiple Listing Service (MLS) explicitly stated to Plaintiff that they would not place the 2009 listing file in the same categorization track as the 2022 listing of the exact same property, providing absolute validation of a systematic data manipulation designed to obscure the historical defect track of the property asset from reachable consumer oversight.

71. On April 24, 2025, during a formal oral argument on the defense's initial Motion to Dismiss, Judge Timothy Ryan examined the master record and explicitly validated the sequential timing of the fraud, ruling that Plaintiff reasonably and justifiably relied on the sellers' Line 198 written declaration of compacting, and that the physical sinking of the vehicle one year later completely contradicted that statement.

72. Judge Timothy Ryan flatly refused to dismiss the fraud claims, formally establishing the Law of the Case that Plaintiff had stated a legally sufficient claim for fraudulent misrepresentation that could not be summarily dismissed on those facts.

73. Plaintiff reasonably and justifiably relied on the sellers' final late-stage written declaration on Line 198 to believe the structure had been permanently

remediated, stabilized, and compacted, and proceeded to close escrow on October 26, 2022.

74. September 2023, almost a year after the close of escrow, a van backed onto that exact location and instantly sank deep into the uncompacted topsoil, completely collapsing the ground surface and exposing a hollow, uncompacted 400-square-foot underground concrete structure and road tunnel spanning six to eight feet deep, requiring an emergency tow truck deployment to extract the vehicle.

75. On July 30, 2025, professional structural engineer Alli Homsi conducted an on-site physical investigation and expert photographing of the subject undisclosed underground structure, validating that a visual inspection by the naked eye is completely unable to determine the presence, scope, or hollow parameters of the structure hidden directly below the sandy patch surface.

76. Following the physical collapse of the property asset, the defendants combined under color of state recording customs to execute a systematic series of rapid, deceptive community property asset migrations and fraudulent conveyances across three distinct transactions—including a midday conveyance on December 17, 2024 —intentionally creating a severe cloud on title to insulate reachable funds and escape judicial enforcement ledgers.

77. Compounding this post-collapse deception, Defendant Martha Olivia Mendoza again explicitly executed the deeds for these December 17, 2024 asset migrations under the false public designation of an unmarried woman, intentionally stacking a third illegal instrument onto the public ledger to cloud the title framework, bypass spousal joinder restrictions, and insulate reachable marital assets from judicial enforcement.

78. Upon Plaintiff seeking to adjudicate these injuries, Defendant HomeSmart, L.L.C. deployed defense attorney Defendant Michael H. Orcutt to file an initial Motion to Dismiss, wherein Defendant Michael H. Orcutt explicitly and fraudulently denied to the tribunal that HomeSmartL.L.C. held any prior professional knowledge of the subterranean defect, directly breaching the attorney duty of candor.

79. **At the April 24, 2025 oral argument, Judge Ryan firmly established the Law of the Case, ruling that a genuine issue of material fraud existed because the seller affirmatively represented that the defect was repaired and compacted, yet one year later a van physically sunk into the ground, proving the representation was fraudulent.**

80. **Despite this settled Law of the Case, the successor takeover judge stepped in and completely manufactured a defense for the defense attorney. The takeover judge intentionally flipped and switched the true chronological**

**order of events, falsely claiming that the seller's fraudulent disclosure came first and that the buyer's inspection came second, utilizing this fabricated timeline to erroneously rule that the inspection negated the fraud by proving Plaintiff knew the repair was inadequate.**

81. **In executing this deception, the takeover judge unconstitutionally denied the formal entry of the structural engineer report into the record track, attempting to hide the evidence out of sight. However, that vital structural report remains active in the record regardless because Plaintiff filed a formal motion attaching it directly onto the master electronic docket. This uncontradicted structural engineer report explicitly stated that the naked eye cannot look at a flat, sandy patch area and declare what is hidden under the ground below it, completely piercing the manufactured defense.**

82. **Compounding this structural breakdown, the state appellate court invented yet another independent defense out of thin air to protect the fraudsters, ruling that even if the seller's fraudulent statement came after the buyer's inspection, the fraud was erased because the buyer initialled the administrative acknowledgment of the documents at the same time.**

83. Defendant Michael H. Orcutt : An individual and corporate defense attorney who actively directed the pre-litigation concealment strategy.

84. Plaintiff's specific allegations herein are brought without limitation to, and expressly reserve, any and all other legal claims, torts, or statutory violations arising from Defendant's broader operational misconduct throughout this matter.

**Statutory Heading (Arizona Supreme Court Rule 42, ER 3.3 - Candor Toward the Tribunal): "A LAWYER SHALL NOT KNOWINGLY MAKE A FALSE STATEMENT OF FACT OR LAW TO A TRIBUNAL OR FAIL TO CORRECT A FALSE STATEMENT OF MATERIAL FACT... OR FAIL TO DISCLOSE TO THE TRIBUNAL LEGAL AUTHORITY IN THE CONTROLLING JURISDICTION KNOWN TO THE LAWYER TO BE DIRECTLY ADVERSE..." — ER 3.3(a).**

85. Defendant Michael H. Orcutt stood before the state tribunal on the morning of December 17, 2024 and presented a completely fabricated factual timeline to secure a verbal denial of Plaintiff's emergency application to freeze property assets.

86. The precise second that the summary emergency hearing concluded, Defendant Michael H. Orcutt signaled a standby corporate escrow unit to immediately execute a rapid midday loop, migrating the entire transaction structure away from Defendant Driggs Title Agency, Inc. over to Defendant First Integrity Title Agency of Arizona, LLC. to finalize the asset migration.

87. Defendant Michael H. Orcutt subsequently deployed a deceptive third-party mail-screening drop to systematically block standard process service, effectively constructing a false tracking illusion to prevent direct personal service from reaching the individual defendants on the active ledger.

88. In his first formal motion to dismiss filed before the state court, Defendant Michael H. Orcutt explicitly and fraudulently declared to the tribunal that corporate entity HomeSmart, L.L.C. held zero prior professional knowledge of the subterranean ground defect.

89. Defendant Michael H. Orcutt then aggressively shifted his narrative before the judge to falsely assert that Plaintiff held actual prior knowledge of the defect, before changing his legal position yet again to claim that nothing HomeSmartL.L.C. ever said was relied upon by Plaintiff to close escrow.

90. Compounding this malicious fraud, Defendant Michael H. Orcutt stood before the judge and falsely accused the unrepresented Plaintiff of being a vexatious litigant to poison the court's perception and deflect attention away from his clients' severe consumer fraud in direct violation of his professional duties under ER 3.3.

**Open Court Misdirection and the Unconstitutional Deprivation of Discovery (Paragraphs 91 through 107): Attorney Defendant Michael H. Orcutt's**

**shifting defenses, the false disclaimer screen, and the systematic breakdown of procedural due** process that entered a dismissal with prejudice in the complete absence of a record track.

(Plaintiff's Intentional Restatement: The following statements are deliberately incorporated verbatim herein to preserve the structural framework of this claim.)

91. Defendant Michael H. Orcutt then aggressively shifted his narrative before the judge to falsely assert that Plaintiff held actual prior knowledge of the defect, before changing his legal position yet again to claim that nothing HomeSmart ever said was relied upon by Plaintiff to close escrow.

92. Compounding this malicious fraud, Defendant Michael H. Orcutt stood before the judge and falsely accused the unrepresented Plaintiff of being a vexatious litigant to poison the court's perception and deflect attention away from his clients' severe consumer fraud in direct violation of his professional duties under ER 3.3.

The False Disclaimer of Representation and Conflict of Interest

93. Defendant Michael H. Orcutt repeatedly declared to the tribunal that he did not represent the individual sellers, Martha and Joel Mendoza, yet he actively directed and orchestrated the rapid afternoon escrow loop to transfer their separate property assets.

94. By presenting this false verbal screen to the court, Defendant Michael H. Orcutt intentionally hid a highly coordinated asset extraction plan designed to strip the court of its jurisdiction and insulate his corporate clients from liability.

95. Under Arizona Supreme Court Rule 42, ER 4.1 (Truthfulness in Statements to Others) and ER 8.4(c), a lawyer is strictly prohibited from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

96. Furthermore, under ER 3.3, an attorney cannot use a false disclaimer of representation to actively mislead a judge while concurrently managing a fraudulent conveyance behind closed doors to defeat immediate judicial oversight.

**Statutory Heading (A.R.S. § 44-1004(A) - Fraudulent Transfers): "A TRANSFER MADE OR OBLIGATION INCURRED BY A DEBTOR IS FRAUDULENT AS TO A CREDITOR... IF THE DEBTOR MADE THE TRANSFER OR INCURRED THE OBLIGATION WITH ACTUAL INTENT TO HINDER, DELAY OR DEFRAUD ANY CREDITOR OF THE DEBTOR..." — A.R.S. § 44-1004(A)(1).**

97. Defendant Michael H. Orcutt deceptively asserted to the tribunal that HomeSmart just randomly happened to receive the secondary property listing for Joel Mendoza as an independent coincidence.

98. Defendant Michael H. Orcutt weaponized the fact that Joel Mendoza was not yet formally named on the caption to block an emergency freeze, intentionally distracting the court from Arizona's strict community property laws under A.R.S. § 25-211 and A.R.S. § 25-215.

99. As an officer of the court, Defendant Michael H. Orcutt had an absolute statutory duty under ER 3.3 and A.R.S. § 44-1004 to disclose any ongoing fraudulent asset transfer.

100. Instead, Defendant Michael H. Orcutt actively orchestrated it behind the scenes, using state court summary procedures as a shield to execute a midnight-style community property conveyance the exact afternoon the tribunal orally denied the emergency motion to ensure the funds were wiped from the ledger.

**Statutory Heading (A.R.S. § 33-420(A) - Recording of Fraudulent Instruments): "A PERSON WHO CAUSES A DOCUMENT TO BE RECORDED... KNOWING OR HAVING REASON TO KNOW THAT THE DOCUMENT IS FORGED, GROUNDLESS, CONTAINS A MATERIAL**

**MISSTATEMENT OR FALSE CLAIM OR IS OTHERWISE INVALID IS LIABLE TO THE OWNER..." — A.R.S. § 33-420(A).**

101. Following this rapid midday escrow loop, when Plaintiff filed a formal motion asking the court to establish that the Mendozas had been legally served by their active participation in the transaction, Defendant Michael H. Orcutt quickly coordinated to find a secondary attorney to make a formal appearance for the Mendozas.

102. This calculated tactical maneuver allowed Defendant Martha Olivia Mendoza and Defendant Joel Mendoza to remain completely hidden behind an attorney's paper ledger, ensuring that neither the courts nor the Plaintiff possess an actual, physical, or serviceable address for the individual defendants.

103. By engineering this deceptive legal screen alongside his mail-screening tracking barrier to evade all personal process, Defendant Michael H. Orcutt actively engaged in intentional interference with regulatory due process and a reckless disregard for court mandates, weaponizing state tracking mechanisms to intentionally frustrate personal service, shield structural fraud, and deny Plaintiff her constitutional protections in direct violation of A.R.S. § 33-420.

Open Court Misdirection and Deceptive Address Screening

104. Compounding his affirmative breaches of candor under ER 3.3, Defendant Michael H. Orcutt stood before the judge in open court and explicitly declared that if the Plaintiff required Defendant Martha Olivia Mendoza's current, serviceable residential address, Plaintiff should simply demand the final escrow closing statement from Defendant Driggs Title Agency, Inc.

105. At the exact moment Defendant Michael H. Orcutt was directing the Plaintiff and the judge to look to Defendant Driggs Title Agency, Inc. for the Mendozas' address, he held direct knowledge that Defendant Driggs Title Agency, Inc. was actively withholding that closing statement from Plaintiff under corporate instructions. By telling the court to rely on a document he was actively helping to bury and move, Defendant Michael H. Orcutt weaponized the summary hearing to construct a false tracking illusion, successfully misdirecting the judge, stalling the development of an evidentiary record, and allowing the defendants to deploy an ongoing third-party mail-screening drop that completely blocked standard process service and denied Plaintiff her constitutional due process.

106. **The state court administrative systems and private defendants subsequently joint-ventured under color of custom to execute a structural breakdown of procedural due process, culminating on September 12, 2025, in the lower court entering a summary dismissal with prejudice against Plaintiff in the total absence of a joint case management scheduling order, with zero**

**document production requests permitted, and with absolutely zero active discovery allowed onto the record.**

107. **This systematic deprivation of a record track extended to the appellate review level, where the panel unconstitutionally acted as an advocate for the defense by inventing an independent, unbriefed paper defense regarding simultaneous initials—an argument never raised by Defendant Michael H. Orcutt or the defense itself—to sanitize the underlying fraud and finalize an unconstitutional taking of property interests under Article II, Section 4 of the Arizona Constitution and the Fourteenth Amendment to the United States Constitution.**

**Exhaustion of Public Administrative Track and Systemic Dismissals**

107(a). Following the discovery of the severe physical property defects and hidden transaction parameters, Plaintiff diligently sought administrative and regulatory remedies by filing formal, verified complaints with the State of Arizona ex rel. Arizona Department of Real Estate and the Arizona Association of Realtors (acting as the state-level administrative arm for the National Association of Realtors).

107(b). On the administrative regulatory track, Plaintiff's enforcement filings with the State of Arizona ex rel. Arizona Department of Real Estate under **File No. C-24-000295; File No. E&C 25F-048;Case No. EC-24251** (Lynch v. Cortes / Jacobo-Ramirez); **Case No. EC-24253** (Lynch v. Cortes / Jacobo-Ramirez) were summarily dismissed with no substantive violations or enforcement actions taken against the corporate brokerage or licensee defendants, completely bypassing the severe non-disclosure of conflicting dual agency tracks prior to contract execution.

107(c). Concurrently, Plaintiff filed formal ethics grievances and compliance tracking claims with the Arizona Association of Realtors under Case No. EC-24211 and Case No. EC-24253 detailing the intentional concealment of the 400-square-foot subterranean defect and the fraudulent duplication of buyer names.

107(d). The local Grievance Committee summarily dismissed Plaintiff's material enforcement claims without an evidentiary hearing, and upon Plaintiff's timely Request for Appeal, the Board of Directors administrative appeal panel completely refused to review the underlying record and issued a final panel denial that completely insulated the licensee defendants from industry oversight, leaving Plaintiff with zero remaining administrative remedies and causing substantial financial injuries and out-of-pocket damages in an amount to be determined at trial by a jury.

**III-A. Summary of Active Counts and Core Legal Theories**

- Common Law Fraud & The Defect-Free Mandate: Defendants are liable under *Horne v. Timbanard*, 6 Ariz. App. 518 (1967), because an affirmative, late-stage written lie used to induce a closing completely bars any "as-is" or due diligence defenses.
- The Due Process Conspiracy under 42 U.S.C. § 1983: Defendants are liable for using state recording and summary mechanics to execute an unconstitutional taking of life savings, a fraudulent conveyance, and an ongoing service evasion tracking barrier.
- The Breach of Fiduciary Duty: Defendant HomeSmart, L.L.C. is liable for concealing the prior monsoon escrow cancellation, ignoring internal structural defect alerts delivered directly to its principal broker, and operating an undisclosed dual agency to secure its corporate commission.
- The Interference with Regulatory Due Process and Property Rights: All named Defendants, acting in a coordinated civil conspiracy under color of state summary and recording customs, did intentionally interfere with, block, and dismantle Plaintiff's statutory rights to a licensed engineering inspection, an administrative agency investigation, and an impartial pre-trial scheduling order track. By deploying a fraudulent contract vehicle to induce a closing, executing midnight community property transfers on December 17, 2024 to drain the asset

pool, burying ARMLS category codes to blindfold consumer tracking, and using state court mechanics to sanitize an intentional tort prior to discovery, the defendants successfully acted in concert to strip an unrepresented 74-year-old widow of her primary residence, her life savings, and her fundamental constitutional right to a unified trial by jury.

## IV. CLAIMS FOR RELIEF (HOW)— ALL SIXTEEN COUNTS (Paragraphs 108 through 212)

### COUNT I: GROSS NEGLIGENCE

**(Against All Defendants)**

108. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 107 of this Verified Civil Complaint as if fully set forth herein.

109. Defendants owed a non-delegable duty of care to Plaintiff and the public to maintain safe transaction parameters and accurate property databases.

110. Defendants breached that duty, acting with reckless disregard for human safety and utter indifference to the well-being of the consumer.

111. Verbatim, the controlling legal standard for a breach establishing this liability dictates: Revised Arizona Jury Instructions (Civil), 7th Edition; Chapter: Fault; Instruction: RAJI (CIVIL) 7th Fault 4 (Gross Negligence): **"A person is liable for gross negligence if that person acts or fails to act with a reckless disregard for the safety of others. A person acts with reckless disregard for the safety of others if that person is aware of, or has reason to know of, facts that would lead a reasonable person to realize that their conduct creates an unreasonable risk of bodily harm [or property damage] to others, and that the risk is substantially greater than that which is necessary to make the conduct negligent."**

112. As a direct and proximate result of Defendants' gross negligence, Plaintiff has suffered severe economic damages, property devaluation, and safety hazards, in an amount to be proven at trial.

**COUNT II: COMMON-LAW FRAUD**

**(Against All Defendants)**

113. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 107 of this Verified Civil Complaint as if fully set forth herein.

114. Defendants owed a legal duty to Plaintiff to disclose all material facts uniquely within their knowledge regarding the property transaction, as alleged herein.

115. Verbatim, the controlling legal standard establishing the elements of this claim dictates: **Revised Arizona Jury Instructions (Civil), 7th Edition; Chapter: Bad Faith / Fraud; Instruction: RAJI (CIVIL) 7th Fraud 1 (Elements of Common Law Fraud)**: **"To establish a claim for fraud, Plaintiff must prove: 1. A representation; 2. Its falsity; 3. Its materiality; 4. The speaker's knowledge of its falsity or ignorance of its truth; 5. The speaker's intent that it should be acted upon by the recipient and in the manner reasonably contemplated; 6. The hearer's ignorance of its falsity; 7. The hearer's reliance on its truth; 8. The hearer's right to rely thereon; and 9. The hearer's consequent and proximate injury."**

116. Plaintiff further alleges that Defendants' deceptive actions violate the explicit real estate statutory mandate under **Arizona Revised Statutes Title 32, Chapter 20, Article 6, Section 32-2161 (False Statements Or Publications)**, which commands verbatim: **"It is unlawful for any person... to authorize, use, direct or aid in the publication, distribution or circularization of any false statement or representation concerning any land... offered for sale."**

117. As established by the factual sequence in paragraphs 1 through 107, Defendants engaged in these material omissions, misrepresentations, and concealments with the specific intent to deceive the Plaintiff, induce the execution of the contract under false pretenses, and walk away from the transaction with Plaintiff's money.

118. Plaintiff acted in justifiable reliance on the false impressions and material omissions created by Defendants' transaction parameters and property databases.

119. As a direct and proximate result of Defendants' fraudulent concealment, Plaintiff has suffered distinct, substantial financial injury and out-of-pocket damages in an amount to be proven at trial.

120. Defendants' fraudulent actions were malicious, intentional, and conducted with an "evil mind," thereby entitling Plaintiff to an award of punitive damages.

**COUNT III: ACTION TO QUIET TITLE (CLOUD ON TITLE)**

**(Against Defendant Martha Olivia Mendoza, Defendant Joel Mendoza, Defendant First Integrity Title Agency of Arizona, LLC. and All Named Escrow or Brokerage Entities Claiming Adverse Interest)**

121. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 107 of this Verified Civil Complaint as if fully set forth herein.

122. Plaintiff maintains an absolute ownership interest in the real property as a result of the underlying transaction.

123. As established by the factual sequence in paragraphs 1 through 107, the title to two separate pieces of real property has been wrongfully clouded by three separate, intentional, and false material declarations regarding the seller's marital status.

124. Verbatim, the controlling statutory authority establishing the right to clear a clouded title dictates: **Arizona Revised Statutes Title 12, Chapter 8, Article 1, Section 12-1101(A) (Parties; claim)**: **"An action to determine and quiet title to real property may be brought by any one having or claiming an interest therein, whether in or out of possession, against any person or the state when such person or the state claims an estate or interest in the real property which is adverse to the party bringing the action."**

125. The false community property and marital status declarations executed by the defendants create an adverse, invalid encumbrance that clouds the title record, impairs marketability, and devalues the real property parameters.

126. As a direct and proximate result of Defendants' intentional actions clouding the title, Plaintiff has suffered and continues to suffer severe economic damages, clouded property parameters, and legal injuries in an amount to be proven at trial.

127. Plaintiff is entitled to a federal judicial decree quieting title in Plaintiff's favor, declaring any adverse marital or community property claims wholly invalid, and removing the cloud from the property records.

---

**COUNT IV: BREACH OF STATUTORY ESCROW MANDATES AND FIDUCIARY DUTY**

**(Against Defendant Driggs Title Agency, Inc., Defendant First Integrity Title Agency of Arizona, LLC. and Defendant Olivia Simmons)**

128. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 107 of this Verified Civil Complaint as if fully set forth herein.

129. Verbatim, the controlling statutory authority establishing the strict parameters and absolute liability of escrow handlers dictates: **Arizona Revised Statutes Title 6, Chapter 7, Article 2, Section 6-841.01(A) (Fiduciary duty)**: **"An escrow agent is the trustee of all monies received or collected and held in escrow... Every escrow agent and every officer, director and employee of an escrow agent who has actual knowledge of fraud or dishonesty in the**

**application of escrow monies, owes a fiduciary duty as trustee to the owner of the monies held in escrow."**

130. Defendants owed a mandatory statutory and fiduciary duty to Plaintiff to act as honest trustees of the transaction and protect transaction parameters.

131. As established by the factual sequence in paragraphs 1 through 107, Defendants directly breached this statutory mandate by actively conspiring to rush the close of escrow on the subject property specifically to bypass a scheduled emergency judicial hearing.

132. As a direct and proximate result of Defendants' breach of statutory escrow mandates, Plaintiff has suffered severe financial injuries, total loss of transaction funds, and out-of-pocket damages in an amount to be proven at trial.

133. Defendants' actions were malicious, deliberate, and conducted with an "evil mind" to intentionally strip Plaintiff of judicial relief, thereby entitling Plaintiff to an award of punitive damages.

## COUNT V: FRAUDULENT TRANSFER AND CONVEYANCE OBSTRUCTION

**(Against Defendant Defendant Michael H. Orcutt Individually)**

134. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 107 of this Verified Civil Complaint as if fully set forth herein.

135. Verbatim, the governing statutory standard prohibiting the orchestration of deceptive asset transfers dictates: **Arizona Revised Statutes Title 44, Chapter 8, Article 1, Section 44-1004(A) (Transfers fraudulent as to present or future creditors): "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor."**

136. **COUNT V: FRAUDULENT TRANSFER AND CONVEYANCE OBSTRUCTION**

137. **(Against Defendant Defendant Michael H. Orcutt Individually)**

138. owed a mandatory statutory duty under the laws of the State of Arizona to refrain from actively participating in, orchestrating, or executing fraudulent asset migrations to insulate debtors from known creditor claims.

139. As established by the factual sequence in paragraphs 1 through 107,

**COUNT V: FRAUDULENT TRANSFER AND CONVEYANCE OBSTRUCTION**

140. **(Against Defendant Defendant Michael H. Orcutt Individually)**

141. directly violated this statutory mandate by actively coordinating with the escrow defendants and utilizing deceptive representations to the tribunal to facilitate the immediate concealment, rushed closure, and migration of reachable community property assets.

142. As a direct and proximate result of Defendant Michael H. Orcutt's intentional statutory violations, a fraudulent community property asset migration was successfully executed, and Plaintiff was obstructed from reaching assets to satisfy fraud liability, causing substantial economic damages in an amount to be proven at trial.

143. Defendant Michael H. Orcutt's actions were malicious, deliberate, and conducted with an "evil mind" to intentionally defraud a creditor, thereby entitling Plaintiff to an award of punitive damages.

## COUNT VI: AIDING AND ABETTING COMMON-LAW FRAUD

**(Against Defendant Michael H. Orcutt Individually)**

140. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 107 of this Verified Civil Complaint as if fully set forth herein.

141. Verbatim, the controlling legal standard establishing liability for an actor who substantially assists or encourages a tortious fraudulent scheme dictates: **Revised Arizona Jury Instructions (Civil), 7th Edition; Chapter: Commercial Torts; Instruction: RAJI (CIVIL) 7th Aiding and Abetting Fraud**: **"A person is liable for harm resulting from the fraudulent conduct of another if that person knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself."**

142. Defendant Michael H. Orcutt owed a mandatory legal duty to Plaintiff and the public to refrain from actively providing substantial assistance, encouragement, or deceptive orchestration to facilitate and protect an ongoing fraudulent property scheme.

143. As established by the factual sequence in paragraphs 1 through 107, Defendant Michael H. Orcutt directly violated this standard by deploying manufactured timelines, active concealments, and deceptive timeline manipulation to insulate his clients' fraud from detection and complete the transaction.

144. As a direct and proximate result of Defendant Michael H. Orcutt's active assistance and facilitation of the underlying fraud, the underlying fraudulent concealment was completed to the severe financial injury and out-of-pocket damage of the Plaintiff, in an amount to be proven at trial.

145. Defendant Michael H.Orcutt's actions were malicious, deliberate, and conducted with an "evil mind" to intentionally advance a fraudulent enterprise, thereby entitling Plaintiff to an award of punitive damages.

## COUNT VII: COMMON-LAW FRAUD AND FRAUDULENT DISCLOSURE INDUCEMENT (SPDS LINE 198)

(Against Defendant HomeSmart, L.L.C., Defendant Martha Olivia Mendoza, Defendant Joel Mendoza, Defendant Connie Ramirez, Defendant Julieth Cortes, and Defendant Michael H. Orcutt)

146. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 107 of this Verified Civil Complaint as if fully set forth herein.

147. Verbatim, the controlling legal standard establishing the elements of common-law fraud dictates: **Revised Arizona Jury Instructions (Civil), 7th Edition; Chapter: Bad Faith / Fraud; Instruction: RAJI (CIVIL) 7th Fraud 1 (Elements of Common Law Fraud)**: **"To establish a claim for fraud, Plaintiff must prove: 1. A representation; 2. Its falsity; 3. Its materiality; 4. The speaker's knowledge of its falsity or ignorance of its truth; 5. The speaker's intent that it should be acted upon by the recipient and in the manner reasonably contemplated; 6. The hearer's ignorance of its falsity; 7. The**

**hearer's reliance on its truth; 8. The hearer's right to rely thereon; and 9. The hearer's consequent and proximate injury."**

148. Verbatim, the corporate brokerage, the real estate licensees, and the individual participants are bound by the explicit real estate statutory mandate under **Arizona Revised Statutes Title 32, Chapter 20, Article 6, Section 32-2161 (False Statements Or Publications)**: **"It is unlawful for any person... to authorize, use, direct or aid in the publication, distribution or circularization of any false statement or representation concerning any land... offered for sale."**

149. Defendants knowingly, intentionally, and maliciously executed, published, and facilitated a late-stage, false material representation on Line 198 of the Seller's Property Disclosure Statement (SPDS) regarding the structural filling and compaction of a severe subterranean ground hazard to intentionally deceive and induce Plaintiff into executing the transaction.

150. As established by the factual sequence in paragraphs 1 through 107, Defendants executed this false written statement with full, documented prior knowledge that the declaration was an absolute fabrication, designed specifically to override known video evidence of the active hazard and secure the transaction parameters.

151. Plaintiff acted in reasonable, justifiable, and exclusive reliance on the explicit assurances of structural compaction forced onto Line 198, absent which Plaintiff would have immediately exercised contract cancellation rights.

152. As a direct and proximate result of Defendants' joint, coordinated fraudulent inducement on Line 198, Plaintiff has suffered distinct, substantial financial injury, out-of-pocket damages, and severe structural hazards in an amount to be proven at trial.

153. Defendants' fraudulent actions were malicious, deliberate, and conducted with an "evil mind" to intentionally exploit a consumer, thereby entitling Plaintiff to an award of punitive damages

**COUNT VIII: DUE PROCESS CONSPIRACY UNDER TITLE 42 U.S.C. SECTION 1983**

**(Against All Defendants)**

154. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 107 of this Verified Civil Complaint as if fully set forth herein.

155. Defendants, acting in a coordinated concert and joint venture under color of state custom, regulatory tracking omissions, and summary court procedures, combined to execute a structural breakdown of the machinery of justice to

unconstitutionally deprive Plaintiff of her fundamental property interests and vested procedural rights without due process of law.

156. Verbatim, the federal statutory enforcement mechanism authorizing civil rights relief against participants manipulating state machinery dictates: **United States Code Title 42, Chapter 21, Subchapter I, Section 1983 (Civil action for deprivation of rights): "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."**

157. Verbatim, the supreme constitutional mandate prohibiting the arbitrary destruction of a citizen's vested property and procedural rights dictates: **United States Constitution Amendment XIV, Section 1 (Due Process Clause): "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."**

158. Verbatim, the matching mandatory state constitutional protection securing an unalterable pathway to an open, fair adjudication track dictates: **Arizona Constitution Article II, Section 4 (Due Process of Law): "No person shall be deprived of life, liberty, or property without due process of law."**

159. As a direct and proximate result of Defendants' joint-venture conspiracy under color of custom, the state tribunal's record track was systematically dismantled, Plaintiff's formal entry of certified municipal and expert structural records was blocked, and Plaintiff was completely stripped of her primary residence and homestead property asset via a rigged summary execution absent a single day of active discovery or a unified jury trial, causing catastrophic economic ruin in an amount to be proven at trial

**COUNT IX: CIVIL CONSPIRACY TO DEFRAUD**

**(Against All Defendants)**

160. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 107 of this Verified Civil Complaint as if fully set forth herein.

161. Verbatim, the controlling legal standard establishing liability for an unlawful joint agreement to accomplish a tortious object dictates: **Revised Arizona Jury Instructions (Civil), 7th Edition; Chapter: Fault; Instruction: RAJI (CIVIL)**

**7th Fault 6 (Civil Conspiracy): "To establish a claim for civil conspiracy, Plaintiff must prove: 1. Two or more people agreed to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means; 2. An underlying tort was committed; and 3. Damages resulted from the conspiracy."**

162. Defendants entered into a coordinated agreement, joint venture, and mutual understanding to accomplish an unlawful purpose and deploy deceptive mechanisms to actively conceal material structural defects and strip Plaintiff of transaction parameters.

163. As established by the factual sequence in paragraphs 1 through 107, Defendants directly executed this conspiracy by coordinating real estate databases, falsifying disclosure timelines, executing sham property declarations, and evading process servers in a unified effort to complete and protect the fraudulent enterprise.

164. As a direct and proximate result of Defendants' joint-venture conspiracy, Plaintiff was induced into a structurally dangerous transaction, stripped of transaction funds, and suffered catastrophic economic ruin in an amount to be proven at trial.

165. Defendants' conspiratorial actions were malicious, deliberate, and conducted with an "evil mind" to intentionally exploit a consumer, thereby entitling Plaintiff to an award of punitive damages.

**COUNT X: BREACH OF FIDUCIARY DUTY**

**(Against Defendant HomeSmart, L.L.C., Defendant Connie Ramirez, and Defendant Julieth Cortes)**

166. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 107 of this Verified Civil Complaint as if fully set forth herein.

167. Verbatim, the mandatory regulatory rule establishing the absolute fiduciary duty of a real estate professional inside the State of Arizona dictates: **Arizona Administrative Code Title 4, Chapter 28, Article 11, Section R4-28-1101(A) (Duties to Client)**: **"A licensee owes a fiduciary duty to the client and shall protect and promote the client's interests. The licensee shall also deal fairly with all other parties to a transaction."**

168. Verbatim, the statutory enforcement standard establishing the absolute standard of professional care and prohibiting misleading real estate omissions dictates: **Arizona Revised Statutes Title 32, Chapter 20, Article 3, Section 32-2153(A)**: **"The commissioner may suspend or revoke a license, deny the issuance of a license, issue a public reproval or take any combination of these actions if the licensee... (1) Makes any substantial misrepresentation... (2) Makes any false promises of a character likely to influence, persuade or**

**induce... (3) Pursues a continued and flagrant course of misrepresentation... (5) Acts for more than one party in a transaction without the knowledge or consent of all parties to the transaction..."**

169. As real estate licensees and an active corporate brokerage, Defendants owed a strict statutory and common law fiduciary duty of absolute loyalty, full disclosure, and care to the Plaintiff.

170. As established by the factual sequence in paragraphs 1 through 107, Defendants directly breached these strict statutory and common law fiduciary duties by failing to disclose material defects, executing an undisclosed dual agency, and manipulating transaction files to shield themselves from liability.

171. As a direct and proximate result of the brokerage defendants' breaches of fiduciary duties and active concealments, Plaintiff was deceptively induced into a structurally dangerous transaction, resulting in catastrophic property damage and financial injuries in an amount to be proven at trial.

172. Defendants’ breaches were malicious, deliberate, and conducted with an "evil mind" to prioritize corporate commission over consumer safety, thereby entitling Plaintiff to an award of punitive damages

## COUNT XI: ABUSE OF PROCESS AND TORTIOUS INTERFERENCE WITH REMEDIES

**(Against All Defendants)**

173. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 107 of this Verified Civil Complaint as if fully set forth herein.

174. Verbatim, the controlling legal standard establishing liability for the perversion of legal process to accomplish an improper purpose dictates: **Revised Arizona Jury Instructions (Civil), 7th Edition; Chapter: Intentional Torts; Instruction: RAJI (CIVIL) 7th Abuse of Process 1**: **"To establish a claim for abuse of process, Plaintiff must prove: 1. A willful act in the use of judicial process; 2. That was done for an improper purpose in the regular conduct of the proceeding; and 3. Damages resulted from the act."**

175. Defendants owed a mandatory legal duty to Plaintiff and the public to refrain from willfully manipulating or perverting administrative and judicial processes to accomplish an improper, collateral purpose.

176. As established by the factual sequence in paragraphs 1 through 107, Defendants directly violated this standard by deploying deceptive mail-screening drops, intentionally evading personal service, and manipulating legal representation parameters for the specific improper purpose of blocking an active discovery record and insulating their fraudulent scheme from consumer oversight.

177. As a direct and proximate result of Defendants' intentional actions, Plaintiff was blocked from verifying personal service and suffered substantial financial injuries and out-of-pocket damages in an amount to be proven at trial.

178. Defendants' actions were malicious, deliberate, and conducted with an "evil mind" to intentionally sabotage the administration of justice, thereby entitling Plaintiff to an award of punitive damages.

## COUNT XII: BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**(Against Defendant HomeSmart, L.L.C., Defendant Martha Olivia Mendoza, Defendant Joel Mendoza, Defendant Connie Ramirez, and Defendant Julieth Cortes)**

179. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 107 of this Verified Civil Complaint as if fully set forth herein.

180. Verbatim, the controlling legal standard establishing liability for a breach of the implied covenant of good faith and fair dealing dictates: **Revised Arizona Jury Instructions (Civil), 7th Edition; Chapter: Contract; Instruction: RAJI (CIVIL) 7th Contract 16 (Implied Covenant of Good Faith and Fair Dealing)**: **"A party to a contract has a duty to act in good faith and deal fairly with the**

**other party to the contract. This duty requires that neither party do anything that will prevent the other party from receiving the benefits of the contract."**

181. Verbatim, the brokerage and licensee defendants are bound by the explicit real estate statutory mandate under **Arizona Revised Statutes Title 32, Chapter 20, Article 3, Section 32-2151.01(A) (Brokerage requirements)**: **"Each licensed real estate broker shall keep records of all real estate... transactions handled by or through the broker... The records shall include... copies of the sales contract, the earnest money receipt, the closing statement... and any other agreements or disclosures..."**

182. Defendants owed a mandatory contractual and statutory duty to Plaintiff to perform the express terms of their agreements and to refrain from any conduct that would destroy or impair the fundamental benefits of the contracts.

183. As established by the factual sequence in paragraphs 1 through 107, the seller explicitly contracted to sell a material defect-free property, but ultimately forced a closure of escrow by falsely claiming she was delivering a material defect-remedied property, a fraudulent failure of performance known to all agent defendants.

184. Defendants directly breached the express terms and implied covenants of the real estate purchase agreement and the exclusive Buyer Representative Agreement by failing to provide code-compliant disclosures, manipulating transaction records,

and using deceptive asset extractions to defeat the core purpose of the transaction frameworks.

185. As a direct and proximate result of Defendants' material breaches of contract and the implied covenant of good faith and fair dealing, Plaintiff was deprived of the fundamental benefit of the contract, left with a structurally collapsed primary residence, and suffered catastrophic financial injuries, total out-of-pocket transaction losses, and title devaluation in an amount to be proven at trial.

**COUNT XIII: STATUTORY DECEPTION AND BREACH OF FIDUCIARY DUTY FOR UNDISCLOSED DUAL AGENCY**

**(Against Defendant HomeSmart, L.L.C.,Defendant Connie Ramirez, Defendant Julieth Cortes, and Defendant National Association of Realtors)**

186. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 107 of this Verified Civil Complaint as if fully set forth herein.

187. Verbatim, the controlling statutory standard under the Arizona Consumer Fraud Act prohibiting any deception, concealment, suppression, or omission of material facts inside a commercial consumer transaction track dictates: **Arizona Revised Statutes Title 44, Chapter 10, Article 7, Section 44-1522(A) (Unlawful practices)**: **"The act, use or employment by any person of any deception,**

**deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."**

188. Verbatim, the mandatory licensing regulation explicitly prohibiting real estate professionals from executing a double-sided transaction absent the prior written, informed consent of all active parties dictates: **Arizona Administrative Code Title 4, Chapter 28, Article 11, Section R4-28-1101(E) (Duties to Client)**: **"A licensee shall not accept compensation from more than one party to a transaction without the prior written consent of all parties to the transaction."**

189. Defendants owed a mandatory statutory and fiduciary duty to Plaintiff to refrain from executing conflicting dual representation tracks and to maintain complete transparency regarding agency parameters.

190. As established by the factual sequence in paragraphs 1 through 107, Defendants directly breached these strict statutory and regulatory mandates by maintaining an undisclosed, conflicting dual agency relationship and actively managing the transaction tracks to maximize corporate commissions while concealing material defects from the consumer.

191. As a direct and proximate result of Defendants' hidden double-sided agency parameters and material statutory deceptions, Plaintiff was completely deprived of independent professional representation, induced into executing a void transaction framework, and suffered substantial financial injuries and out-of-pocket damages in an amount to be proven at trial.

192. Defendants' actions were malicious, deliberate, and conducted with an "evil mind" to prioritize corporate commissions over consumer safety, thereby entitling Plaintiff to an award of punitive damages.

COUNT XIV: COMMON LAW CIVIL CONSPIRACY AND COERCION

(Against All Defendants)

193. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 107 of this Verified Civil Complaint as if fully set forth herein. **Revised Arizona Jury Instructions (Civil), 7th Edition; Chapter: Fault; Instruction: RAJI (CIVIL) 7th Fault 6 (Civil Conspiracy): "To establish a claim for civil conspiracy, Plaintiff must prove: 1. Two or more people agreed to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means; 2. An underlying tort was committed; and 3. Damages resulted from the conspiracy."**

194. Defendants entered into a coordinated, continuous, and malicious civil conspiracy to accomplish an unlawful purpose, combining their individual actions and corporate capacities to deploy extreme economic duress and fraudulent misrepresentations to strip an unrepresented consumer of her vested assets.

195. Under the absolute controlling authority of the State of Arizona, because this joint transaction forms an inherently indivisible, inextricably intertwined civil conspiracy, liability must be adjudicated holistically as a single continuous enterprise from inception to conclusion.

(a) The Absolute Common-Law Prohibition: YOU CANNOT CONTRACT OUT OF FRAUD. Under long-standing Arizona jurisprudence, the public policy of this State strictly dictates that a tortfeasor cannot use boilerplate contract forms, "as-is" clauses, or integration text to insulate themselves or their co-conspirators from liability for an affirmative, written misrepresentation used to induce an unrepresented consumer into a real estate transaction. Because the defendants' late-stage written declaration on Line 198 certifying that the subterranean ground hazard was filled and compacted was an active, deliberate lie, all contractual waiver defenses are void ab initio and completely wiped out of existence.

196. (b) The Unified Enterprise of Coercion: YOU CANNOT SPLIT A COERCION CASE, AND YOU CANNOT ADJUDICATE LIABILITY ABSENT

DISCOVERY. A civil coercion and civil conspiracy transaction is inherently indivisible under the law and cannot be procedurally fragmented into isolated components or sliced into individual pieces of paper. By combining their corporate and individual capacities to engineer the accelerated December 17,2024 midday escrow loop, deploy deceptive mail-screening drops to block personal service, and misdirect tribunals on timelines, the defendants partook in a single, continuous, and inseparable scheme of economic duress and fraud to unconstitutionally strip an unrepresented 74-year-old widow of her primary residence and homestead.

197. As a direct and proximate result of Defendants' unified conspiratorial enterprise and continuous economic coercion from inception to conclusion, Plaintiff was deceptively induced into a void transaction layout, stripped of all transaction funds, and handed a structurally collapsed and worthless primary residence, causing catastrophic financial ruin in an amount to be proven at trial.

198. Defendants' conspiratorial actions were malicious, intentional, deliberate, and conducted with an "evil mind" to exploit an unrepresented consumer and frustrate personal process service, thereby entitling Plaintiff to an award of punitive damages.

## COUNT XV: AVOIDANCE OF FRAUDULENT CONVEYANCE AND CANCELLATION OF DEEDS

**(Against All Defendants)**

199. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 107 of this Verified Civil Complaint as if fully set forth herein.

200. Verbatim, the statutory standard under the Uniform Fraudulent Transfer Act providing the absolute legal mechanisms to void and cancel deceptive asset extractions dictates: **Arizona Revised Statutes Title 44, Chapter 8, Article 1, Section 44-1007(A): "In an action for relief against a transfer or obligation under this article, a creditor, subject to the limitations in section 44-1008, may obtain: 1. Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim. 2. An attachment or other provisional remedy against the asset transferred or other property of the transferee... 3. Subject to applicable principles of equity and in accordance with applicable rules of civil procedure: (a) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property. (b) Appointment of a receiver to take charge of the asset transferred or of other property. (c) Any other relief the circumstances may require."**

201. Verbatim, the statutory real estate standard authorizing the complete cancellation of invalid transaction parameters and establishing corporate brokerage liability for circulating fraudulent title data tracks dictates: **Arizona Revised**

**Statutes Title 32, Chapter 20, Article 6, Section 32-2162(A): "A person who has been damaged by a false statement or representation concerning any land offered for sale... may bring an action to recover damages or to cancel and rescind the transaction."**

202. Defendants owed a mandatory statutory duty under the laws of the State of Arizona to refrain from executing fraudulent asset migrations or circulating deceptive property data tracks designed to hinder, delay, or defraud creditors.

203. As established by the factual sequence in paragraphs 1 through 107, Defendants directly violated these statutory mandates by orchestrating a rapid pattern of community property asset migrations and fraudulent conveyances across separate transactions with the actual intent to insulate fraud proceeds and block active judicial enforcement parameters.

204. As a direct and proximate result of Defendants' joint, coordinated fraudulent conveyances and asset shuffles, reachable transaction funds were hidden from active court ledgers, an adverse cloud was maintained on the public record, and Plaintiff was obstructed from executing judicial enforcement parameters, causing severe financial injuries in an amount to be proven at trial.

205. Defendants' actions were malicious, deliberate, and conducted with an "evil mind" to intentionally insulate fraud proceeds, thereby entitling Plaintiff to a

federal judicial decree voiding the transfers, attaching the property, and canceling all invalid deeds

**COUNT XVI: ACTION TO VOID FRAUDULENT CONVEYANCE AND QUIET TITLE**

**(Against All Defendants)**

206. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 107 of this Verified Civil Complaint as if fully set forth herein.

207. Verbatim, the statutory standard defining Arizona's absolute community property ownership track dictates: **Arizona Revised Statutes Section 25-211(A): "All property acquired by either husband or wife during the marriage is the community property of the husband and wife..."**

208. Verbatim, the mandatory statutory restriction requiring both spouses to execute any valid property instrument dictates: **Arizona Revised Statutes Section 25-214(C)(1): "Either spouse has a management and control of the community property, except that the joinder of both spouses is required in any transaction for the acquisition, disposition or encumbrance of an interest in real property other than an unpatented mining claim or a lease of less than one year."**

209. Defendants owed a mandatory statutory duty under the laws of the State of Arizona to refrain from executing or recording false marital property instruments that violate community property restrictions.

210. As established by the factual sequence in paragraphs 1 through 107, the defendants directly violated these statutory mandates by executing and recording deeds under the false public designation of an "unmarried woman" across multiple transactions to circumvent community property spousal joinder restrictions.

211. The execution of these instruments under a false marital screen constitutes a structural violation of Arizona property law, rendering the conveyances void ab initio and creating a clouded, legally toxic title framework on Plaintiff's primary residence.

212. As a direct and proximate result of Defendants' statutory violations, a permanent cloud has been placed onto the public land records, impairing marketability and causing substantial financial injuries in an amount to be proven at trial, thereby entitling Plaintiff to a federal judicial decree declaring the deeds wholly void and quieting title in Plaintiff's favor

**INDEX OF COUNTS**

**COUNT I:** GROSS NEGLIGENCE (Against All Defendants)

**COUNT II:** COMMON-LAW FRAUD (Against All Defendants)

**COUNT III:** ACTION TO QUIET TITLE (CLOUD ON TITLE) (Against Defendant Martha Olivia Mendoza, Defendant Joel Mendoza, Defendant First Integrity Title Agency of Arizona, LLC. and All Named Escrow or Brokerage Entities Claiming Adverse Interest)

**COUNT IV:** BREACH OF STATUTORY ESCROW MANDATES AND FIDUCIARY DUTY (Against Defendant Driggs Title Agency, Inc., Defendant First Integrity Title Agency of Arizona, LLC. and Defendant Olivia Simmons)

**COUNT V:** FRAUDULENT TRANSFER AND CONVEYANCE OBSTRUCTION (Against Defendant Michael H.Orcutt Individually)

**COUNT VI:** AIDING AND ABETTING COMMON-LAW FRAUD (Against Defendant Michael H. Orcutt Individually)

**COUNT VII:** COMMON-LAW FRAUD AND FRAUDULENT DISCLOSURE INDUCEMENT (SPDS LINE 198) (Against Defendant HomeSmart, L.L.C., Defendant Martha Olivia Mendoza, Defendant Joel Mendoza, Defendant Connie Ramirez, Defendant Julieth Cortes, and Defendant Michael H. Orcutt)

**COUNT VIII:** DUE PROCESS CONSPIRACY UNDER TITLE 42 U.S.C. SECTION 1983 (Against All Defendants)

**COUNT IX:** CIVIL CONSPIRACY TO DEFRAUD (Against All Defendants)

**COUNT X:** BREACH OF FIDUCIARY DUTY (Against Defendant HomeSmart, LLC, Defendant Connie Ramirez, and Defendant Julieth Cortes)

**COUNT XI:** ABUSE OF PROCESS AND TORTIOUS INTERFERENCE WITH REMEDIES (Against All Defendants)

**COUNT XII:** BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (Against Defendant HomeSmart,L.L.C., Defendant Martha Olicia Mendoza, Defendant Joel Mendoza, Defendant Connie Ramirez, and Defendant Julieth Cortes)

**COUNT XIII:** STATUTORY DECEPTION AND BREACH OF FIDUCIARY DUTY FOR UNDISCLOSED DUAL AGENCY (Against Defendant HomeSmart, L.L.C., Defendant Connie Ramirez, Defendant Julieth Cortes, and Defendant National Association of Realtors)

**COUNT XIV:** COMMON LAW CIVIL CONSPIRACY AND COERCION (Against All Defendants)

**COUNT XV:** AVOIDANCE OF FRAUDULENT CONVEYANCE AND CANCELLATION OF DEEDS (Against All Defendants)

**COUNT XVI:** ACTION TO VOID FRAUDULENT CONVEYANCE AND QUIET TITLE (Against All Defendants)

## V. PRAYER FOR RELIEF

213. WHEREFORE, Plaintiff Catherine Jane Lynch respectfully requests that this Court enter judgment in her favor and against all Defendants, jointly and severally, and grant a Federal Judicial Decree Quieting Title in Plaintiff's favor pursuant to **Arizona Revised Statutes Section 12-1101(A)**, declaring that Plaintiff is the sole, lawful owner of the primary residence located at 714 N 27th Ave, Phoenix, AZ 85009, and completely removing all clouds on title created by Defendants' false marital declarations, to satisfy the remedies demanded under Counts III and XVI.

214. Plaintiff further requests an Order Voiding and Canceling any and all recorded property instruments, deeds, or encumbrances executed under the false designation of an "unmarried woman" as absolute nullities ab initio for failure to comply with the mandatory spousal joinder restrictions under **Arizona Revised Statutes Section 25-214(C)(1)**, to satisfy the specific statutory property remedies demanded under Count XVI.

215. Plaintiff further requests a Permanent Injunction strictly prohibiting all Defendants, their spouses, corporate agents, and successors from ever asserting or claiming any adverse estate, community property interest, lien, or right in or to Plaintiff's primary residence, to satisfy the remedies demanded under Counts IV, V, X, and XV.

216. Plaintiff further requests an Award of Actual and Compensatory Damages for the complete economic ruin, property devaluations, out-of-pocket transaction losses, and structural remediation costs caused by Defendants' actions, to satisfy the remedies demanded under Counts I, II, VII, and XII.

217. Plaintiff further requests an Award of Punitive Damages against all Defendants in an amount to be determined at trial to punish their malicious, deliberate conduct and discourage future exploitation of unrepresented consumers, to satisfy the remedies demanded under **Counts VIII,** VI, IX, XI, XIII, and XIV.

218. Plaintiff further requests an award of Plaintiff's taxable costs incurred throughout this action, to satisfy the remedies demanded under all Counts I through XVI, along with any other and further relief that this Court deems just, equitable, and necessary to deliver full and clear title to the Plaintiff.

Dated this twentieth day of October, 2026.

Respectfully submitted,

By: /s/ Catherine Jane Lynch Catherine Jane Lynch

Catherine Jane Lynch, Plaintiff, Pro Se (Pro Per)

714 N 27th Ave Phoenix, AZ 85009

**DEMAND FOR JURY TRIAL**

219. Pursuant to **Federal Rule of Civil Procedure 38(b)**, Plaintiff Catherine Jane Lynch hereby demands a trial by jury on all issues, claims, and counts so triable as a matter of right.

Dated this twentieth day of October, 2026.

Respectfully submitted,

By: s/s Catherine Jane Lynch Catherine Jane Lynch

Catherine Jane Lynch, Plaintiff Pro Per

714 N 27th Ave

Phoenix, AZ 85009; 480-532-0393

catherinelynchfwbc@gmail.com

**VERBATIM UNSWORN DECLARATION UNDER PENALTY OF PERJURY**

220. I, Catherine Jane Lynch, declare under penalty of perjury under the laws of the United States of America, pursuant to Title 28, United States Code, Section 1746, that I am the Plaintiff Pro Per in the above-entitled action, that I have read the foregoing Verified Civil Complaint and know the contents thereof, and that the factual statements, timelines, and allegations concerning transaction parameters, physical property defects, unpermitted subterranean road tunnels, fraudulent property conveyances, identity and address concealment loops, and institutional administrative misconduct contained therein are true and correct to the best of my own personal knowledge, information, and belief.

Executed this twentieth day of October, 2026, at Phoenix, Arizona.

By: s/s Catherine Jane Lynch Catherine Jane Lynch

Catherine Jane Lynch, Plaintiff Pro Per